UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Andrew J. Yates,                                             Case No. 3:23-cv-930

    Plaintiff/Counterclaim Defendant,

    v.                                                     MEMORANDUM OPINION
                                         AND ORDER

CEO8 Consulting, LLC, *et al.*,

    Defendants/Counterclaim Plaintiffs.

## I.    INTRODUCTION

Plaintiff/Counterclaim Defendant Andrew J. Yates filed a motion to dismiss the counterclaims alleged by Defendants/Counterclaim Plaintiffs CEO8 Consulting, LLC and Christoper Ostrander against Yates.  (Doc. No. 22).  Defendants filed a brief in opposition to Yates's motion, (Doc. No. 23), and Yates replied.  (Doc. No. 24).  For the reasons stated below, I grant Yates's motion to dismiss.

## II.    BACKGROUND

In 2016, Yates formed Liberty Ridge Properties, LLC ("Liberty Ridge"), an Ohio limited liability company, "for the purpose of developing high-end residential townhomes in the Findlay, Ohio area."  (Doc. No. 1 at 3).

In 2017, CEO8, a company solely owned and controlled by Ostrander, loaned Liberty Ridge $500,000.  (Doc. No. 1 at 3).  In July 2017, Yates, CEO8, and Liberty Ridge entered an investment agreement through which CEO8 agreed to invest an additional $200,000 into Liberty Ridge in exchange for a conversion of the $500,000 loan to equity and a minority equity interest in Liberty

Ridge (the "Investment Agreement").  (*Id.*).  The terms of the Investment Agreement specified that both CEO8 and Yates would be entitled to receive minimum distributions while the agreement was in effect.  (*Id.* at 9-10).  CEO8 was entitled to $67,741 in year one, $68,442 in year two, $155,045 in year three, $149,021 in year four, $150,511 in year five, while Yates was entitled to $12,075 in year one, $42,444 in year two, $102,838 in year three, $111,441 in year four, and $112,556 in year five. (*Id.*).

The Investment Agreement was set to expire on December 31, 2022.  (*Id.* at 4 and 11).  In anticipation of the expiration date, Yates alleges that he told Ostrander several times in 2022 that he planned to repurchase CEO8's shares, and Liberty Ridge's attorney sent him documents to complete the repurchase in December 2022.  (*Id.* at 4).  Yates intended to structure the purchase as a Section 1031 real estate exchange to avoid increased tax liability for CEO8 and Ostrander.  (*Id.*).  Yates alleges he completed and provided all necessary documents to Liberty Ridge's attorney in December 2022, but that Ostrander did not complete the transaction by the Investment Agreement expiration date.  (*Id.*).

According to Yates, Ostrander "demanded [first] to be released as personal guarantor on certain loans for which Liberty Ridge was the primary obligor," before Ostrander would complete the repurchase transaction.  (*Id.* at 4).  Yates alleges this demand was not a condition for repurchase included in the Investment Agreement, but he asserts he attempted to obtain the releases on the loans from the primary obligors, though he was unable to do so prior to the expiration of the Investment Agreement.  (*Id.* at 4-5).  Thus, the transaction was not completed, and Yates lost the right to repurchase CEO8's shares.  (*Id.* at 5).  He subsequently filed suit against CEO8 and Ostrander, asserting claims for breach of contract and tortious interference with a contract.  (*Id.* at 5-6).

In his answer, Ostrander maintains that the Investment Agreement simply expired before Yates could repurchase the shares and denies impeding the transaction.  (Doc. No. 19 at 2-3). Ostrander claims that a membership unit pledge agreement was additionally executed by both parties to secure the Investment Agreement, with Yates pledging: (1) the membership units in Liberty Ridge; (2) all distributions, interest, profits, and payments of any kind that accrued; and (3) all proceeds and products of the foregoing, including insurance proceeds as collateral to the Investment Agreement.  (*Id.* at 11).

Ostrander alleges that Yates defaulted on the required distributions to be made to CEO8 under the Investment Agreement and secured by the membership unit pledge agreement.  (*Id.*).  He additionally alleges that Yates defaulted by failing to perform any of the terms or conditions of the Investment Agreement.  (*Id.*).  Ostrander claims to have notified Yates in writing of his default twice in January 2023, with the default to be cured within sixty (60) days.  (*Id.* at 11-12).  Ostrander claims Yates provided written acknowledgement of the breach, but that he failed to cure it within sixty days.  (*Id.* at 12).

While Ostrander asserts he had the right to "take ownership of Yates' membership units in the Company" if he defaulted, he appears to claim this was not possible because Yates took the distributions by making unapproved and unlawful monetary withdrawals from Liberty Ridge.  (Doc. No. 19 at 12).  Based on these allegations, Ostrander counterclaimed for breach of fiduciary duty, promissory estoppel, fraud, unjust enrichment, civil theft, fraudulent inducement, breach of contract, conversion, and declaratory judgment.  (*Id.* at 14-21).

Yates moves to dismiss the counterclaims in their entirety under Rules 12(b)(6) and 9(b). (Doc. No. 22-1 at 4-20).

### III.    STANDARD

Rule 12 provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted)).

The plaintiff must offer more than conclusory allegations or legal conclusions masquerading as factual allegations. *Twombly*, 550 U.S. at 555 (The complaint must contain something more than "a formulaic recitation of the elements of a cause of action."). A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir. 2008). The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so

4

long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Rule 9(b) implements a heightened pleading standard, which requires a party: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012) (citation omitted). It is well-settled that "[u]nder federal pleading standards, the complaint must state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's reliance on [the] defendant's false statement of fact." *Windsor-Laurelwood Ctr. Behav. Med. v. Waller Landsen Dortch & Davis*, No. 1:13 CV 00098, 2015 WL 1859005, at *5 (N.D. Ohio Apr. 22, 2015) (internal quotation marks and further citation omitted). "Conclusory statements of reliance are not sufficient to explain with particularity how [the party] detrimentally relied on the alleged fraud." *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 852-53 (6th Cir. 2006) (citation omitted).

## IV. ANALYSIS

### A. BREACH OF CONTRACT

A valid contract exists if there is "'an offer on one side, an acceptance on the other side, and mutual assent between the parties with regard to the consideration for the bargain.'" *Tidewater Fin. Co. v. Cowns*, 968 N.E.2d 59, 63 (Ohio Ct. App. 2011) (quoting *Nunez v. J.L. Sims Co.*, 2003-Ohio-3386, 2003 WL 21473328, at *8 (Ohio Ct. App. June 27, 2003)). In a breach of contract case, a claimant must establish "the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018).

In Counts VIII and IX, Defendants assert Yates is liable for breach of contract against CEO8 because of his allegations that Yates failed to make distributions and satisfy the contractual

5

obligations of the parties' agreements. (See Doc. No. 19 at 18-19). They also claim that Yates is liable for breach of contract against Ostrander personally for failing to satisfy "certain obligations" in removing Ostrander as personal guarantor of Liberty Ridge's debt. (*Id.* at 19). Further, Defendants allege CEO8 satisfied all its contractual obligations, Yates's breaches were "willful and malicious" and CEO8 has been damaged in excess of $75,000. (*Id.*).

Yates contends Defendants' counterclaims fail to allege that Liberty Ridge did not pay the minimum distributions per the terms of the Investment Agreement by the June 30, 2023, deadline. (Doc. No. 22-1 at 4). Additionally, Yates argues Defendants' counterclaims fail because Defendants do not plausibly allege they suffered damages. (*Id.* at 17).

The Investment Agreement satisfies the existence of a contract requirement for the breach of contract claim in Count VIII. The parties mutually agreed to convert the $500,000 loan to equity with the additional consideration of CEO8's $200,000 investment. But Defendants have not sufficiently plead that Yates failed to perform his obligations under the Investment Agreement. Despite arguing Yates failed to make the contractual distributions, Defendants admit that distributions began in May 2022. (Doc. No. 19 at 9). This places the distribution payments within the required period before the June 30, 2023 deadline.

Moreover, even if a failure to make annual payments constituted a breach of the Investment Agreement, Defendants still fail to plead a plausible breach of contract claim because they have not identified any damages they allegedly suffered. They allege only Ostrander was "damaged" by the alleged breach. (*Id.*). But damages are an essential element of a breach of contract claim under Ohio law, and Defendants "failed to allege any economic losses which would be compensable under a breach of contract action." *Hackathorn v. Springfield Loc. Sch. Dist. Bd. of Educ.*, 640 N.E.2d 882, 886 (1994)) (citation omitted).

6

Count VIII does not adequately allege facts to support the second and third elements of a breach of contract claim under Ohio law. Therefore, I dismiss this counterclaim.

In Count IX, Defendants have not sufficiently pleaded that a valid contract existed to remove Ostrander as personal guarantor of Liberty Ridge's debt. Defendants do not identify the terms of that alleged contract. Nor is there evidence of any consideration exchanged between the parties. Moreover, Defendants again fail to sufficiently allege they suffered damages. The claim does not satisfy any of the breach of contract elements under Ohio law and, therefore, I also dismiss this counterclaim.

## B. BREACH OF FIDUCIARY DUTY

A fiduciary relationship is one "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Hope Acad. Broadway Campus v. White Hat Mgmt., L.L.C.*, 46 N.E.3d 665, 676 (Ohio 2015). A claim for a breach of fiduciary duty is a negligence claim with "a higher standard of care." *Strock v. Pressnell*, 527 N.E.2d 1235, 1243 (Ohio 1988). "[A] party must show the existence of a fiduciary relationship, failure to comply with a duty accorded that relationship, and damages proximately resulting from that failure" to advance a breach of fiduciary duty claim. *M.S. by Slyman v. Toth*, 97 N.E.3d 1206, 1215-16 (Ohio Ct. App. 2017) (citation and internal quotation marks omitted).

Determining if a fiduciary relationship exists is a fact specific inquiry that must be done on a case-by-case basis. *Id.* at 1216. Generally, there is no fiduciary relationship in arm's length business transactions, though one may arise out of a contractual relationship "'where both parties to the transaction understand that a special trust of confidence has been reposed.'" *Id.* (quoting *RPM, Inc. v. Oatey Co.*, 2005-Ohio-3744, 2005 WL 663057, at *4 (Ohio Ct. App. Mar. 23, 2005)).

7

Though Ohio law generally does not recognize tort claims arising out of a breach of contract claim, a tort claim may exist independently of a breach of contract claim based on the same course of action "if the breaching party also breaches a duty separately from that created by the contract, that is, a duty owed even if no contract existed."  *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996).  Dismissal of a breach of fiduciary duty claim has been upheld by Ohio courts where a party does not demonstrate that the alleged fiduciary breach occurred independently of the contractual breach.  *See Carter v. Univ. Park Dev. Corp.*, 2022-Ohio-3462, 2022 WL 4589195, at *4 (Ohio Ct. App. Sept. 30, 2022).

Defendants assert that Yates owed a fiduciary duty to CEO8 but failed to "observe, satisfy, or adhere to his fiduciary duty." (Doc. No. 19 at 14).  Further, Defendants allege Yates breached his fiduciary duty to Yates by breaching their contract and engaging in self-dealing, embezzlement, and conflict of interest transactions.  (*Id.* at 15).  Defendants also allege CEO8 was "directly injured and/or damaged" by Yates's breach of fiduciary duty.  (*Id.*).

First, Defendants' counterclaim fails to state a plausible claim for relief because they do not demonstrate how the breach of fiduciary duty claim is independent from the breach of contract claim.  Instead, Defendants' allegations make the claims dependent on one another, as they allege that the breach of fiduciary duty arises out of Yates' alleged breach of contract.

Moreover, Defendants again failed to adequately allege what damages they suffered from any alleged breach. Therefore, I dismiss this counterclaim.

## C. PROMISSORY ESTOPPEL

The doctrine of promissory estoppel provides a party a remedy for damages resulting from an "unfulfilled or fraudulent promise." *Olympic Holding Co., L.L.C. v. ACE Ltd*, 909 N.E.2d 93, 100 (Ohio 2009).  A party may invoke this doctrine when another makes "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a

8

third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *McCroskey v. State*, 456 N.E.2d 1204, 1205 (Ohio 1983) (citation and quotation marks omitted).

To prevail on the claim, a party "must show a clear and unambiguous promise and reliance by the party to whom the promise is made." *HAD Enters. v. Galloway*, 948 N.E.2d 473, 481 (Ohio Ct. App. 2011). "A promise is defined as a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Id.* "A clear and unambiguous promise is one that is 'definite in the sense of being clearly a promise and not just a statement of intentions.'" *Peddler's Junction, LLC v. Washington Square, LLC,* 2025-Ohio-3504, 2025 WL 2457713, at *6 (Ohio Ct. App. Aug. 21, 2025) (quoting *Garwood Packaging, Inc. v. Allen & Co., Inc.*, 378 F.3d 698, 702 (7th Cir. 2004)).

The promise also must be one that could be reasonably expected "to induce action." *McCroskey,* 456 N.E.2d at 1205 (citation and quotation marks omitted). This requirement is met if a promise communicates "clear terms" that the promisor reasonably expected "to induce reliance." *Peddler's Junction*, 2025 WL 2457713, at *6 (citations omitted). A party's reliance on the promise "must be reasonable and foreseeable, and the party relying on the promise must have been injured by the reliance." *Doe v. Adkins*, 674 N.E.2d 731, 737 (Ohio Ct. App. 1996).

Defendants assert in Counts II and III that both CEO8 and Ostrander reasonably relied to their detriment on representations made by Yates, who managed and reported Liberty Ridge's financial records and used Liberty Ridge's funds, and that both were induced to make decisions they otherwise would not have. (Doc. No. 19 at 15-16). But Defendants do not allege Yates made any "clear and unambiguous" promise to them. They allege only that they "reasonably relied upon the representations of Mr. Yates in the management and reporting of the financial records of Liberty Ridge." (Doc. No. 19 at 15, 16). Even when viewed in the light most favorable to Defendants, this

9

allegation cannot plausibly be read as "a manifestation of intention to act or refrain from acting in a specified way." *HAD Ents.*, 948 N.E.2d at 481. Therefore, I dismiss both counterclaims.

### D. FRAUD AND FRAUDULENT INDUCEMENT

A common-law fraud claim requires proof of:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Pierre Invs., Inc. v. CLS Capital Grp., Inc.*, 202 N.E.3d 870, 877 (Ohio Ct. App. 2022) (citations and quotation marks omitted). Ohio courts treat fraud and fraudulent inducement claims the same and apply the same elements to both. *Cantlin v. Smythe Cramer Co.*, 114 N.E.3d 1260, 1270-71 (Ohio Ct. App. 2018); *Gentile v. Ristas*, 828 N.E.2d 1021, 1034 (Ohio Ct. App. 2005).

In Count IV, Defendants assert Yates concealed material facts related to Liberty Ridge's finances that Yates had a duty to disclose. (Doc. No. 19 at 16). Defendants also assert in Count VII that Yates made false and fraudulent representations to induce Ostrander not to pursue his contractual rights and remedies and to remain as the personal guarantor of Liberty Ridge debt. (*Id.* at 18). Defendants maintain they reasonably relied on these representations and suffered damages as a result. (*Id.*).

As I noted above, Rule 9(b) requires a plaintiff: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Tr.*, 683 F.3d at 247 (citation omitted). But Defendants have not pointed to any specific fraudulent statements made or any specific facts that Yates concealed. Defendants' conclusory statements that Yates "made representations" or "concealed certain facts" fall far short for their heightened pleading burden under Rule 9(b).

They also are insufficient to satisfy the elements of fraud under Ohio law. Defendants failed to explain of why any alleged statements were false or intentionally misleading. Therefore, I dismiss both counterclaims.

### E. UNJUST ENRICHMENT

A party is unjustly enriched when they retain "'money or benefits which in justice and equity belong to another.'" *Liberty Mut. Ins. Co. v. Indus. Comm'n of Ohio*, 532 N.E.2d 124, 125 (Ohio 1988) (quoting *Stan-Clean of Lexington, Inc. v. Stanley Steemer Int'l, Inc.*, 440 N.E.2d 1237, 1239 (Ohio 1981)). To prevail on an unjust enrichment claim, a party must show that (1) a benefit was conferred by a party, (2) the receiving party had knowledge of the benefit, and (3) the party "retained the benefit under circumstances in which it was unjust to do so without payment." *Bunta v. Superior VacuPress, L.L.C.,* 218 N.E.3d 838, 848 (Ohio 2022) (citation omitted). Unjust enrichment provides an equitable remedy for a breach of an implied contract. *Id.* But Ohio law generally does not permit recovery for an unjust enrichment claim "when an express contract covers the same subject matter." *Id.* at 849.

Defendants assert that Yates was unjustly enriched by CEO8's $700,000 investment into Liberty Ridge and continues to be benefited by allegedly failing to compensate Ostrander or CEO8 for the investment. (Doc. No. 19 at 17). Defendants also assert Yates benefitted from Ostrander facilitating CEO8's investment into Liberty Ridge and from Ostrander's role as personal guarantor of Liberty Ridge's debt. *Id.* Moreover, Defendants assert that Yates knew of the benefits he received "personally and as a member of Liberty Ridge" and was unjustly benefited. *Id.*

CEO8 cannot proceed with a claim for unjust enrichment because the basis for that claim – the $700,000 investment – is covered by an express contract, the Investment Agreement. (*See* Doc. No. 1 at 9). Nor does Ostrander's role as investment facilitator and personal guarantor offer a basis for relief under this theory, as Defendants fail to allege sufficient facts to advance a plausible claim

11

satisfying the elements of unjust enrichment.  They do not specify what benefit was conferred upon Yates from Ostrander's role as investment facilitator or guarantor, and they do not specify what circumstances made it unjust for Yates to retain the alleged benefit conferred on him.

Defendants offer only conclusory statements that are insufficient to state a claim for unjust enrichment under Ohio law.  Therefore, I dismiss this counterclaim.

## F. CIVIL THEFT

Ohio Revised Code § 2307.61 provides civil remedies for victims of theft.  *Roseman Bldg. Co., LLC v. Vision Power Sys., Inc.*, 2010-Ohio-229, 2010 WL 310586, at *3 (Ohio Ct. App. Jan. 25, 2010).  It allows "property owners to seek prescribed compensatory or liquidated damages" resulting from theft.  *Buckeye Check Cashing, Inc. v. Proctor*, 1999 WL 394884, at *1 (Ohio Ct. App. June 15, 1999).  A party must show proof of an injury by a criminal act to recover damages under § 2307.61, *Roseman*, 2010 WL 310586 at *3, though the claimant need not offer proof of a criminal conviction for a theft offense to be entitled to damages.  *Cartwright v. Batner*, 15 N.E.3d 401, 421 (Ohio Ct. App. 2014) (citing Ohio Rev. Code § 2307.61(G)).  Ohio law provides that:

> No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent; (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) By deception; (4) By threat; (5) By intimidation.

Ohio Rev. Code § 2913.02(A).

In Count VI, Defendants allege "Yates committed a theft offense under . . . [§] 2913.01." (Doc. No. 19 at 17).  They further allege Yates "deprived CEO8 of [its] property, namely owed distributions that were not paid due to Mr. Yates' unlawful withdraw[al] and distributions to himself," and that Yates "unlawfully funneled unapproved money from Liberty Ridge into a management company [Yates] owned." (*Id.* at 17, 18).  Defendants contend CEO8 "suffered damages" as a result.  (*Id.* at 18).

12

Defendants have not pled a plausible civil theft claim because Yates's alleged misconduct arose out of his performance of his contractual obligations.  As Yates points out, (Doc. No. 22-1 at 14-15; Doc. No. 24 at 8), a party cannot maintain a claim for civil theft when the alleged basis for that claim is a breach of contract.  *See STE Invs., LLC v. Macprep, Ltd.*, 2022-Ohio-2614, 2022 WL 3011012, at *9 (Ohio Ct. App. July 29, 2022) (citing *Wildcat Drilling, LLC v. Discovery Oil & Gas, LLC*, 121 N.E.3d 65, 72 (Ohio Ct. App. 2018) (*rev'd on other grounds*)).  Therefore, I dismiss this counterclaim.

### G. CONVERSION

"'Conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner or withholding it from his possession under a claim inconsistent with his rights.'"  *Disciplinary Counsel v. Squire*, 958 N.E.2d 914, 924 (Ohio 2011) (quoting *Joyce v. Gen. Motors Corp.*, 551 N.E.2d 172 (Ohio 1990)). A party's conversion claim must show (1) a party's "ownership or right to possession of the property at the time of conversion; (2) [a party's] conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages."  *6750 BMS, L.L.C. v. Drentlau*, 62 N.E.3d 928, 934 (Ohio Ct. App. 2016).

In Count X, Defendants assert that CEO8 had a contractual right to receive distributions under the Investment Agreement and claim that CEO8 did not receive its contractual distributions because Yates "unlawfully converted those distributions [for] his own use and benefit."  (Doc. No. 19 at 20).  Defendants further assert that Yates "converted Liberty Ridge resources, profits, revenue, and distributions to a management company he owned" without CEO8 approval.  (*Id.*).

This claim fails for the same reasons as Defendants' civil theft counterclaim.  *See, e.g., Kott v. Gleneagles Pro. Builders & Remodelers, Inc.*, 968 N.E.2d 593, 596 (Ohio Ct. App. 2012)).  (affirming dismissal of conversion claim because "the existence of a contract precludes the assertion of a tort claim based on the same conduct unless there is a duty owed separate from the contract").

Defendants' conversion claim arises out of actions Yates allegedly took in contravention of his duties under the parties' contractual agreements.  Therefore, I dismiss this counterclaim as well.

## H. DECLARATORY JUDGMENT

Finally, I also dismiss Count XI, in which Defendants seek a declaratory judgment "concerning whether Mr. Yates was in default of the Membership Unit Pledge Agreement due to his breaches of the Investment Agreement and any modification to the Investment Agreement."  (Doc. No. 19 at 20).  I concluded above that Defendants failed to allege a plausible claim for breach of the Investment Agreement and, therefore, Defendants are not entitled to a declaratory judgment to that effect.

## V.     CONCLUSION

For the reasons stated above, I grant Plaintiff/Counterclaim Defendant Andrew Yates's motion to dismiss the counterclaims alleged by Defendants/Counterclaim Plaintiffs CEO8 Consulting LLC and Christopher Ostrander.  (Doc. No. 22).


So Ordered.


s/ Jeffrey J. Helmick
United States District Judge

14